UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SAFT AMERICA, INC., a
Delaware corporation,

    Plaintiff,

v.                                    CASE NO. 3:18-cv-446-J-32JBT

JABIL CIRCUIT (GUANGZHOU)
LTD, a foreign enterprise, and
BOURNS, INC., a California
corporation,

    Defendants.
_____/

## **REPORT AND RECOMMENDATION**[1]

**THIS CAUSE** is before the undersigned on Defendant Bourns, Inc.'s ("Bourns") Motion to Dismiss ("Motion") (Doc. 57), Plaintiff's Response thereto (Doc. 61), Bourns' Reply (Doc. 65), and Plaintiff's Surreply (Doc. 73). The Motion was referred to the undersigned for a report and recommendation regarding an appropriate resolution. (Doc. 71.) For the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that the Motion be **GRANTED**, and that

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

Counts V and VI of the Amended Complaint (Doc. 40), which are the only counts against Bourns,[2] be **DISMISSED with prejudice** as to Bourns because Plaintiff's claims against Bourns are barred by the economic loss rule.[3]

### I.   Background

This case arises out of Plaintiff Saft America, Inc.'s purchase of more than 40,000 allegedly defective electronic components from Defendant Jabil Circuit (Guangzhou) Ltd. ("Jabil") for use in Plaintiff's EV2 industrial batteries. (*See* Doc. 40 at 4.)  According to the Amended Complaint, Bourns manufactured power resistors, which are subcomponents of Plaintiff's industrial batteries. (*Id.* at 2.) After manufacturing the power resistors at issue, Bourns sold them to Jabil.[4] (*Id.*) Jabil incorporated them into busbar cards that it manufactured. (*Id.* at 3–4.)  Jabil subsequently sold and delivered the busbar cards to Plaintiff, who incorporated them into its industrial batteries. (*Id.* at 3.)  Later, Plaintiff discovered that many of

---

[2] In Count V of the Amended Complaint, Plaintiff brings a claim for negligence against Bourns. (Doc. 40 at 9.) In Count VI, Plaintiff brings a claim for "negligence/damage to other property" against Bourns and Jabil Circuit (Guangzhou) Ltd. (*Id.* at 10.)

[3] It appears that amendment would be futile. Plaintiff has not moved for leave to amend or given any indication that it can attempt to state a claim that is not barred by the economic loss rule. Thus, the Court has discretion to dismiss the case against Bourns with prejudice. *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.") (en banc).

[4] Bourns contends that it did not sell the power resistors to Jabil but to a third-party authorized distributor, who sold them to Jabil. (Doc. 57 at 2.) Whether Bourns sold the power resistors directly to Jabil does not affect the undersigned's analysis.

the busbar cards were defective, and the defect rendered the batteries unusable. (*Id.* at 4–5.) Plaintiff further alleges that the busbar cards were either defectively manufactured by Jabil, or that Jabil incorporated defective power resistors manufactured by Bourns into the busbar cards. (*Id.*)

Plaintiff initially filed suit in state court against only Jabil, and the case was subsequently removed to this Court. (Doc. 1; Doc. 2-2 at 2.) Thereafter, Plaintiff filed the Amended Complaint (Doc. 40), which added negligence claims against Bourns. Bourns then filed the instant Motion, arguing, among other things, that dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is required because the economic loss rule bars Plaintiff's claims.[5] (Doc. 57 at 13–20.)

## II. Legal Principles

### A. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), the Court must determine whether the Amended Complaint sets forth sufficient factual allegations to establish a claim upon which relief can be granted. In evaluating whether Plaintiff has stated a claim, the Court must determine whether the Amended Complaint satisfies Federal Rule of Civil Procedure 8(a)(2), which requires that a pleading

---

[5] Bourns also argues that the Court lacks personal jurisdiction over it. (Doc. 57 at 2–13.) However, "[i]n Florida, before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine whether the allegations of the complaint state a cause of action." *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010) (quotations omitted). Because the undersigned recommends that Plaintiff has failed to state a viable claim against Bourns, the undersigned further recommends that the Court need not address the issue of personal jurisdiction.

3

contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To satisfy this standard, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not do. *Iqbal*, 556 U.S. at 678. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Though detailed factual allegations are not required to satisfy this standard, Rule 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Indeed, allegations showing "[t]he mere possibility the defendant acted unlawfully [are] insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'") (quoting *Twombly*, 550 U.S. at 557). Rather, the well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In ruling on a motion to dismiss under Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true. *Sinaltrainal*, 578 F.3d at 1260. However, the Court is

not required to accept Plaintiff's legal conclusions. *Iqbal*, 556 U.S. at 678 (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Nor is the Court "required to draw plaintiff's inference." *Sinaltrainal*, 578 F.3d at 1260 (internal citation and quotations omitted). "Similarly, unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations." *Id.* (internal citation and quotations omitted); *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

### B.   The Economic Loss Rule

"[T]he economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399, 401 (Fla. 2013).[6] In *Tiara*, the Florida Supreme Court recognized that the rule had its roots in the product liability context and limited it to that context going forward, despite its prior expansion. *Id.* at 401, 407.[7] *Tiara* noted that "[t]he essence of the early holdings discussing the rule is to prohibit a party from suing in tort for purely economic losses to a product or object provided

---

[6] In this diversity case, Florida substantive law applies. *See Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

[7] Prior to *Tiara*, at least one commentator had noted that although the rule was "relatively straightforward in product cases," it was difficult to apply to construction contracting claims, although it had been extended to that and other areas. H. Hugh McConnell, *The Other Property Problem—Applying the Economic Loss Rule to Construction Contracting Claims*, 74 Fla. Bar J. 87 (June 2000).

to another for consideration, the rationale being that in those cases contract principles [are] more appropriate than tort principles for resolving economic loss without an accompanying physical injury or property damage." *Id.* at 405 (quotations omitted). The economic loss rule was "developed to protect manufacturers from liability for economic damages caused by a defective product beyond those damages provided by warranty law." *Id.* at 403. "The economic loss rule has been interpreted as a broad bar to tort claims for damage solely to the product itself." *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1337 (S.D. Fla. 2013) (quotations omitted).

The Florida Supreme Court has defined economic losses as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." *Tiara Condo. Ass'n, Inc.*,110 So. 3d at 401. However, "[t]he other property exception is limited to property unrelated and unconnected to the product sold." *Zurich Am. Ins. Co. v. Hi-Mar Specialty Chemicals, LLC*, Case No. 08-80255-civ/JOHNSON, 2010 WL 298392, at *6 (S.D. Fla. Jan. 19, 2010) (quotations omitted); *see Jarmco, Inc. v. Polygard, Inc.*, 668 So. 2d 300, 303 (Fla. Dist. Ct. App.), *approved*, 684 So. 2d 732 (Fla. 1996) ("The [economic loss rule] does not apply to personal injury claims or to property damage claims for property *unrelated and unconnected in any way* to the product sold.") (emphasis added).

"In determining if plaintiff has suffered damage to other property, the question is whether property other than the defective property itself, or property

6

other than that which the defective property is an integral part of, has been damaged." *Pycsa Panama, S.A. v. Tensar Earth Techs., Inc.*, 625 F. Supp. 2d 1198, 1248 (S.D. Fla. 2008); *Premix-Marbletite Mfg. Corp. v. SKW Chemicals, Inc.*, 145 F. Supp. 2d 1348, 1359 (S.D. Fla. 2001) ("Florida law does not consider property that the defective product is integrated into to be other property."). "Florida law has long held that when a component part harms or destroys a finished product, the finished product does not satisfy the 'other property' exception." *Pycsa Panama, S.A. v. Tensar Earth Techs., Inc.*, Case No. 06-20624-civ, 2006 WL 8432715, at *5 (S.D. Fla. Dec. 20, 2006); *Am. Universal Ins. Grp. v. Gen. Motors Corp.*, 578 So. 2d 451, 453 (Fla. Dist. Ct. App. 1991) ("It is our view that the oil pump was an integral or component part of the engine manufactured by General Motors and thus the damage to the engine caused by this component part was not damage to separate property.").[8] "Courts have refused to bifurcate products into parts where a component part harms or destroys the finished product." *Turbomeca, S.A. v. French Aircraft Agency, Inc.*, 913 So. 2d 714, 717 (Fla. Dist. Ct. App. 2005) ("The airframe and engine are not two separate pieces of property—they are one product."); *see Lowenstein v. Cessna Aircraft Co.*, Case

---

[8] It appears that *American Universal* was the first Florida case to address the economic loss rule in the context of component parts of a product. McConnell, *supra* note 7. This law in the products liability area has remained consistent. Any confusion was caused by the "unprincipled expansion" of the economic loss rule into other contexts, which the Supreme Court deemed "unwise and unworkable" in *Tiara*, thus retreating from that expansion. *Tiara Condo. Ass'n, Inc.*, 110 So. 3d at 407.

No. 05-81108-civ, 2006 WL 8433701, at *1 (S.D. Fla. June 19, 2006) ("[T]he allegedly defective replacement propellers and engines are part of a finished product that cannot be bifurcated.").

### III. Analysis

In Counts V and VI of the Amended Complaint, Plaintiff alleges that Bourns negligently designed and/or manufactured the power resistors that ultimately rendered Plaintiff's batteries inoperable. (Doc. 40 at 9–11.) Although Plaintiff alleges in conclusory terms that the power resistors caused "damage to other property," the non-conclusory allegations establish only that "Saft's EV2 batteries which incorporated the defective electronic components" were damaged. (*Id.* at 6, 10.) Plaintiff alleges that the power resistors were a "subcomponent" of the batteries, that they were "incorporated" into the batteries, and that they "provide part of the circuitry control for the batteries." (*Id.* at 2.) Thus, pursuant to the abundant case law discussed in Section II.B herein, the undersigned recommends that the economic loss rule applies. The only reasonable inference from the allegations is that the power resistors were an integral or component part of the batteries. *See also Tyco Safety Prod. Can., Ltd. v. Abracon Corp.*, Case No. 08-80604-civ, 2008 WL 4753728 (S.D. Fla. Oct. 28, 2008) (holding that the economic loss rule barred claim for damages to smoke detectors caused by component parts of the detectors); *Progressive N. Ins. Co. v. Therm Tech. Corp.*, Case No. 8:06-cv-1252-T-30MSS, 2007 WL 4557206, at *1 (M.D. Fla. Dec. 21, 2007) (observing that the plaintiff's claim for damage to a motorhome caused by a defective heating unit

8

installed in the motorhome was barred by the economic loss rule under Florida law).

The undersigned recommends that Plaintiff's arguments to the contrary lack merit. First, Plaintiff appears to argue that if any property other than the product purchased by Plaintiff, i.e., the busbar cards incorporating the power resistors, is damaged, the economic loss rule does not bar the claim. (Doc. 73 at 2.) Specifically, Plaintiff argues that because the battery cells were outside the scope of the property it purchased from Jabil, the battery cells qualify as "other property." (*Id.*) However, this argument is foreclosed by the Florida law previously cited.

Moreover, the cases cited by Plaintiff do not support Plaintiff's argument. On the contrary, two of the three cases relied on by Plaintiff in its surreply rejected the "other property" argument in favor of a more expansive view of the economic loss rule. (Doc. 73 at 2.) *See East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 867, 875 (1986) (finding no damage to "other property" where the defective turbine components at issue damaged only the turbines themselves and noting that "[s]ince all but the very simplest of machines have component parts, [a contrary] holding would require a finding of 'property damage' in virtually every case where a product damages itself. Such a holding would eliminate the distinction between warranty and strict products liability"); *Casa Clara Condo. Ass'n, Inc. v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244, 1247 (Fla. 1993) (focusing on the "product purchased" rather than the "product sold" in holding that the economic loss rule applied because the homes purchased by

homebuyers were the finished products, not the concrete supplied by the defendant, which was merely a component of the homes). The third case on which Plaintiff relies, *Tiara*, held that the economic loss rule applies only in the products liability context. *Tiara Condominium Association, Inc.*, 110 So. 3d at 399. It did not discuss or define "other property." Thus, the isolated statements in these cases relied on by Plaintiff, when put in proper context, do not support Plaintiff's argument.

Plaintiff also cites *Blackhawk Yachting, LLC v. Tognum America, Inc.*, Case No. 12-14208-civ, 2013 WL 12199875 (S.D. Fla. Apr. 23, 2013) in support of its argument. In *Blackhawk*, the plaintiff owned a yacht and alleged that the engine system, which was manufactured by defendant, was defective and caused damage to "other property," including the hull of the vessel. *Id.* at 5. The court found that the plaintiff sufficiently alleged damage to "other property," and thus the claim was not barred by the economic loss rule. *Id.* However, *Blackhawk* is factually distinguishable because a vessel and its engine can more easily be viewed as separate property than a battery and its circuitry control components. Moreover, *Blackhawk* is not binding on this Court and does not appear persuasive in light of the Florida and federal cases previously cited. For example, a judge in this district came to the opposite conclusion in a case involving similar facts. *See Hunter v. Marlow Yachts Ltd., Inc.*, Case No. 8:09-cv-1772-T-TBM, 2011 WL 973356 (M.D. Fla. Mar. 18, 2011) (finding a claim for damage to yacht caused by fire from improperly installed light fixture was barred under Florida law). The

10

undersigned recommends that *Hunter* is more persuasive and more consistent with Florida law than *Blackhawk*.

Accordingly, the undersigned recommends that the Amended Complaint does not plausibly allege a claim that is not barred by the economic loss rule. Therefore, the undersigned recommends that the Motion be granted.

### IV.   Conclusion

Accordingly, it is respectfully **RECOMMENDED** that:

1. The Motion (**Doc. 57**) be **GRANTED**.

2. Counts V and VI of the Amended Complaint (**Doc. 40**) be **DISMISSED with prejudice** as to Bourns.

3. The Court consider whether to enter final judgment without delay in favor of Bourns and against Plaintiff pursuant to Federal Rule of Civil Procedure 54(b).

**DONE AND ENTERED** at Jacksonville, Florida, on June 3, 2019.

_____
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Timothy J. Corrigan
United States District Judge

Counsel of Record

11