# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

SAFT AMERICA, INC., etc.,

        Plaintiff,

v.                                      Case No. 3:18-cv-446-J-32JBT

JABIL CIRCUIT (GUANGZHOU),
LTD., etc., and BOURNS, INC., etc.,

        Defendants.

---

# O R D E R

The motions before the Court present complex issues involving the economic loss rule and personal jurisdiction. The Court's review has been enhanced by the superior briefing of all parties and was further aided by the oral argument on August 30, 2019, the record of which is incorporated by reference.

## I.    Background

Plaintiff Saft America, Inc., ("Saft"), a subsidiary of Saft Groupe, S.A., of France, manufactures batteries in Jacksonville, Florida, for industrial and commercial use in the United States and abroad. Saft purchased component parts—busbar cards and power boards—for its EV-1 and EV-2 batteries from defendant Jabil Circuit (Guangzhou), Ltd., a Chinese enterprise. For the

busbar cards, Jabil purchased certain subcomponent parts manufactured by Bourns, Inc., a California corporation. Saft alleges the EV-2 components it bought from Jabil (over 40,000 of them) were defective and ruined Saft's EV-2 batteries. Saft filed a complaint in state court on February 13, 2018, bringing claims against Jabil only for UCC breach of express warranty (Count I), breach of implied warranty of merchantability (Count II), breach of implied warranty of fitness for particular purpose (Count III), and negligence/damage to other property (Count IV). Jabil removed the case to federal court on diversity grounds on April 3, 2018.[1] Thereafter, Saft amended its complaint to add Bourns as a defendant, naming it in a negligence count (Count V) and in a joint and several negligence count against both Bourns and Jabil (Count VI) (Doc. 40), supported by allegations that the power resistor subcomponents Bourns sold to Jabil were defective, and that either the power resistors or the busbar cards or both caused damage to Saft's EV-2 batteries.

Jabil filed an answer and a counterclaim (Doc. 44) (which Saft answered (Doc. 46)) and Bourns filed a motion to dismiss under Rule 12(b)(2) and (6) (Doc. 57), contending that personal jurisdiction is lacking and the complaint fails to state a claim against Bourns. Saft responded (Doc. 61), Bourns replied (Doc.

---

[1] The Court is satisfied that it has subject matter jurisdiction based on diversity. See Order, Doc. 58. Florida substantive law governs the negligence claims and the personal jurisdiction issue.

65), and Saft filed a sur-reply (Doc. 73). The Court referred the motion to the assigned Magistrate Judge for a Report and Recommendation. The Magistrate Judge recommended that the motion to dismiss be granted, determining that the economic loss rule barred the negligence claims against Bourns (Doc. 85). Saft objected to the Magistrate Judge's Report and Recommendation (Doc. 86) and requested argument (Doc. 87). Bourns responded (Docs. 88, 89). In light of the Magistrate Judge's Report and Recommendation, Jabil moved to dismiss the negligence counts against it based on the economic loss rule (Doc. 91).[2] Saft responded (Doc. 101). The Court heard argument on August 30, 2019 and now issues its ruling.

## II. Analysis[3]

Bourns moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), and both Bourns and Jabil move to dismiss for failure to state a claim under Rule 12(b)(6). "In Florida, before a court

_____

[2] Jabil recognizes that its motion to dismiss is untimely, as it has already filed an answer (and counterclaim) to the amended complaint. See Doc. 44. However, the Court declines to consider untimeliness as a basis to deny the motion.

[3] Under 28 U.S.C. § 636(b), a district judge may accept, reject or modify in whole or in part the magistrate judge's report and recommendation; parts to which objections have been lodged must be reviewed de novo. Fed. R. Civ. P. 72(b)(3). Saft has raised factual and legal objections to the Report and Recommendation on Bourns' motion. Jabil's motion raises the same economic loss rule issue as Bourns', but its motion was not before the Magistrate Judge. Thus, the Court considers both motions de novo.

addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine 'whether the allegations of the complaint state a cause of action.'" <u>PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.</u>, 598 F.3d 802, 808 (11th Cir. 2010) (quoting <u>Wendt v. Horowitz</u>, 822 So. 2d 1252, 1260 (Fla. 2002)). Thus, the Court first addresses whether the negligence allegations state a claim.

## A. The Economic Loss Rule

Florida's economic loss rule is designed "to prohibit a party from suing in tort for purely economic losses to a product or object provided to another for consideration, the rationale being that in those cases, contract principles are more appropriate than tort principles for resolving economic loss without an accompanying physical injury or property damage." <u>Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.</u>, 110 So. 3d 399, 405 (Fla. 2013) (quotation and citations omitted). While a party cannot sue in tort if the only damage is to the product itself, it can maintain a cause of action if there is damage to "other property." <u>Id.</u> at 405-06.

The issue here is whether Saft's battery is "other property." The answer is not so clear. Some of the cases apply the "integration" or "component part" analysis, finding that if a defective component is integrated into a product, the product is not considered "other property." <u>See, e.g.</u>, <u>Turbomeca, S.A. v.</u>

French Aircraft Agency, Inc., 913 So. 2d 714, 717 (Fla. 3d DCA 2005) ("Courts have refused to bifurcate products into parts where a component part harms or destroys the final product."); Pycsa Panama, S.A. v. Tensar Earth Techs., Inc., No. 06-20624-CIV, 2006 WL 8432715, at *5 (S.D. Fla. Dec. 20, 2006) ("Florida law has long held that when a component part harms or destroys a finished product, the finished product does not satisfy the 'other property' exception.") (citing Casa Clara Condo. Ass'n, Inc. v. Charley Toppino & Sons, Inc., 620 So. 2d 1244 (Fla. 1993) (building not separate from its defective concrete), Turbomeca, 913 So. 2d 714 (helicopter not separate from its defective engine), Jarmco, Inc. v Polygard, Inc., 668 So. 2d 300 (Fla. 4th DCA 1996) (boat not separate from defective boat resin), and Am. Univ. Ins. Grp. v. Gen. Motors Corp., 578 So. 2d 451 (Fla. 1st DCA 1991) (engine not separate from its defective oil pump)). See also Tyco Safety Prods. Can., Ltd. v. Abracon Corp., No. 08-80604-CIV, 2008 WL 4753728, at *1-4 (S.D. Fla. Oct. 28, 2008) (holding claim for damage to plaintiff's smoke detectors into which defendant's allegedly defective component parts were integrated was not damage to other property).

But still other cases focus on the product purchased, finding that if a defective component is placed into the plaintiff's own product, the plaintiff can show damage to "other property." See, e.g., Blackhawk Yachting, LLC v. Tognum Am., Inc., No. 12-14208-CIV-MARTINEZ, 2013 WL 12199875, at *5 (S.D. Fla. Apr. 23, 2013) (holding plaintiff alleged damage to other property

when defective engine damaged plaintiff's yacht's hull); <u>Boracayan del Sur, S.A. v. Vidco Indus. Inc.</u>, No. 05-21948-CIV-JORDAN, 2007 WL 9700684, at *3 (S.D. Mar. 22, 2007) (holding plaintiff alleged damage to other property when defective glass panels caused damage to other parts of house); <u>Ins. Co. of N. Am. v. Man Engines & Components, Inc.</u>, No. 05-60699-CIV-ZLOCH, 2006 WL 8432178, at *2-5 (S.D. Fla. Jun. 27, 2006) (explaining in admiralty case that parties' contract must be viewed to determine whether the product damaged was part of their bargain); <u>Ice Fern Shipping Co., Ltd. v. Golten Serv. Co., Inc.</u>, No. 1:04-cv-20741, 2005 WL 3692840, at *3 (S.D. Fla. Mar. 22, 2005) (holding under admiralty law that where parties' contract was for repair to engine's speed regulator, damage to engine itself was damage to other property).

While these federal district court decisions are not binding here, there is some support for this analysis from two key Florida Supreme Court decisions. <u>See</u> <u>Tiara</u>, 110 So. 3d at 405 (explaining that the economic loss rule "prohibit[s] a party from suing in tort for purely economic losses <u>to a product or object provided to another for consideration</u> . . . .") (emphasis added); <u>Casa Clara</u>, 620 So. 2d at 1247 ("The character of a loss determines the appropriate remedies, and, to determine the character of a loss, <u>one must look to the product purchased by the plaintiff</u>, not the product sold by the defendant.") (emphasis

added).[4]  See also Salzedo Office, LLC v. Facchina Constr. of Fla., LLC, No. 18-cv-21374-UU, 2019 WL 2105924, at *1-2 (S.D. Fla Feb. 28, 2019) (citing Casa Clara for the "product purchased" language, and finding plaintiff alleged damage to other property where defective windows caused damage to the rest of the building plaintiff already owned (as distinguished from Casa Clara, where the plaintiffs purchased a whole house into which defective drywall was integrated)).

The Court evaluates a 12(b)(6) motion to dismiss construing the complaint in the light most favorable to the plaintiff, assuming the truth of the well-pled allegations.  Dusek v. JPMorgan Chase & Co., 832 F.3d 1243, 1246 (11th Cir. 2016).  Saft alleges that Jabil's busbar cards and Bourns' resistors caused damage to Saft's other property—its EV-2 batteries—rendering them unusable.  Doc. 40 at ¶¶ 7, 13.  Saft's EV-2 battery is a custom designed and engineered item manufactured for commercial and industrial use, not an everyday common product whose workings are familiar.  While Jabil and Bourns contend that their products were fully integrated into Saft's batteries,

---

[4] While Tiara later receded from Casa Clara, it was only to the extent that Casa Clara was being relied on to support the extension of the economic loss rule in circumstances other than products liability.  See Tiara, 110 So. 3d at 405-07.  Casa Clara continues to be cited post-Tiara (albeit infrequently) for its proposition about the character of the loss.  See, e.g., Epic Hotel, LLC v. Culligan Intern. Co., 159 So. 3d 1014, 1015 (Fla. 3d DCA 2015) (citing Casa Clara for proposition that the character of the loss depends on product purchased by the plaintiff, not product sold by the defendant).

Saft maintains (borrowing from caselaw) that its battery is more akin to the hull of a ship into which a defective engine has been placed, and further suggests that engineering detail regarding the construction of Saft's battery will clarify how it operates.[5]  As Florida's Fifth District Court of Appeal noted, "What constitutes damage to 'other property' is sometimes a puzzling circumstance to determine in resolution of economic loss cases." Southland Const., Inc. v. Richeson Corp., 642 So. 2d 5, 9 (Fla. 5th DCA 1994); see also Pycsa Panama, 2006 WL 8432715, at *5 (quoting Southland's "puzzling circumstance" language and denying motion to dismiss based on economic loss rule because "[t]he pleadings are not entirely clear as to the nature and extent of damage to any property other than the [defective property] itself" so "it is possible that the 'other property' exception may apply"); Boracayan, 2007 WL 9700684, at *3 (finding that at motion to dismiss stage, where the facts are not developed, an allegation of damage to other property is enough to survive an economic loss rule challenge, which could resurface at summary judgment).

---

[5] Moreover, the parties disagree as to which contract governed Saft's purchase of the EV-2 busbar cards from Jabil, so turning to a contract for guidance as to what was purchased or how it operates is not possible at this stage.  See Doc. 79 (transcript of January 4, 2019 hearing at which parties argued whether the EV-2 busbar was a modification of the EV-1 busbar (and therefore covered by their Manufacturing Services Letter Agreement) or was instead a new and different product (not covered by that agreement)).

Likewise here:   Saft's allegations of damage to other property are sufficient to avoid application of the economic loss rule at the pleadings stage.[6]

For this reason, Jabil's motion to dismiss (Doc. 91) will be denied without prejudice to raising the economic loss rule later in the case.   Because the Court concludes that the counts against Bourns are sufficient to satisfy Rule 8, the Court next turns to Bourns' argument that it is nonetheless due to be dismissed for lack of personal jurisdiction.[7]

---

[6] The Court rejects defendants' contentions that Saft's allegations that the busbar cards and power resistors were "incorporated" into Saft's batteries precludes Saft from arguing that damage to its batteries is damage to other property for purposes of the economic loss rule.   While it may well turn out that the economic loss rule applies in this case, the record needs to be developed concerning the engineering, construction, and operation of the battery and its component parts to determine how the battery and its components work, what went wrong here, and, ultimately, what it means under the law.   The information before the Court at this stage is therefore unlike the circumstances in Louisiana Machinery Co., LLC v. Devon Shipping, Inc., No. 3:09-cv-957-J-32JRK, 2010 WL 1523032 (M.D. Fla. Apr. 15, 2010), an admiralty case where the undersigned determined on a motion to dismiss that the economic loss rule applied to bar the shipowner's negligence claim.   There, the shipowner conceded that the object of the parties' contract was the overhaul of an engine and provision of parts, so when the overhaul resulted in damage to that engine, the Court determined that the economic loss rule (as extended in admiralty to parties other than manufacturers) precluded the shipowner's negligence claim. Id. at *2 (citing E. River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 866-67 (1986)).

[7] Bourns additionally argued under Rule 12(b)(6) that the negligence claims are barred because it did not owe Saft a legal duty (a point Jabil also raises as an affirmative defense).   However, Bourns' argument for a limitation of its legal duty depends on the absence of property damage, which dovetails back to the economic loss rule, an issue the Court leaves for another day.

## B. **Personal Jurisdiction**[8]

"In a motion to dismiss for lack of personal jurisdiction, a court must accept the facts alleged in plaintiff's complaint as true, to the extent they are not contradicted by defendant's affidavits." Kim v. Keenan, 71 F. Supp. 2d 1228, 1231 (M.D. Fla. 1999) (citing Cable/Home Comm. Corp. v. Network Prods., Inc., 902 F.2d 829, 855 (11th Cir. 1990)). "Once the plaintiff pleads sufficient material facts to form a basis for in personam jurisdiction, the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other pleadings." Carmouche v. Carnival Corp., 36 F. Supp. 3d 1335, 1338 (S.D. Fla. 2014), aff'd sub nom., Carmouche v. Tamborlee Mgmt., Inc., 789 F.3d 1201 (11th Cir. 2015). "If the defendant provides sufficient evidence, 'the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents.'" Thomas v. Brown, 504 F. App'x 845, 847 (11th Cir. 2013) (quoting Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir. 1996)). If the evidence conflicts, the "court must construe all reasonable inferences in favor of the plaintiff."[9] Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).

---

[8] Because the Magistrate Judge determined that the economic loss rule barred Saft's negligence claims against Bourns, he did not reach the question of personal jurisdiction. However, this issue was fully briefed by the parties (see Docs. 57, 61, 65, 73) and argued at the August 30, 2019 hearing.

[9] The district court may conduct an evidentiary hearing to adjudicate the issue, in which case it would make credibility findings, weigh evidence, and find relevant jurisdictional facts. PVC Windoors, 598 F.3d at 810. Neither party has requested an evidentiary hearing, and the Court does not find it necessary

"A federal court sitting in diversity jurisdiction undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009) (citations omitted). Because the due process issue invokes constitutional concerns, the Court must first determine whether the state's long-arm statute is satisfied. PVC Windoors, 598 F.3d at 807 (noting the district court should have analyzed the long-arm statute before addressing due process).

"A defendant can be subject to personal jurisdiction under the Florida long-arm statute in two ways[.]" Schulman v. Inst. for Shipboard Educ., 624 F. App'x 1002, 1004 (11th Cir. 2015).

> [F]irst, section 48.193(1)(a) lists acts that subject a defendant to specific personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida, Fla. Stat. § 48.193(1)(a); and second, section 48.193(2) provides that Florida courts may exercise general personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in 'substantial and not isolated activity' in Florida, id. § 48.193(2).

Id., 624 F. App'x at 1004-05 (citing United Techs., 556 F.3d at 1274).

---

to reach a decision.

Saft alleges the Court has specific jurisdiction over Bourns under two subsections of Florida's long-arm statute: §§ 48.193(1)(a)(1) and 48.193(1)(a)(6)(b). Saft also contends the Court has general jurisdiction over Bourns under Florida's long-arm statute because Bourns is engaged in substantial and not isolated activity in the state. Fla. Stat. § 48.193(2). Bourns contests both specific and general jurisdiction. Both require review of Bourns' connections to and contacts with Florida.

## 1. The Parties' Evidence about Bourns' Florida Connections

In its amended complaint, Saft alleges that "Bourns knew" that the subcomponent resistor it sold to Jabil "would be incorporated into Saft's batteries and Bourns knew the specific purpose for which the resistor would be incorporated . . . . Bourns was negligent in the design and/or manufacture of the resistor and Saft subsequently used the resistor, causing injury to Saft's other property located in Duval County, Florida. Further, Bourns is engaged in substantial and not isolated activity within Florida by registering with the Florida Department of State to transact business in Florida and by conducting its business through multiple offices in Florida that service the Florida market for Bourns." Doc. 40 at ¶ 7.

As part of its motion to dismiss, Bourns supplied a declaration from its Executive Vice President, Gregg Gibbons. Doc. 57, Ex. 1. Gibbons states that Bourns is a California company established in 1952, its headquarters are in

California, it has 7,000 employees worldwide, and it makes electronic components for industries. Bourns has an independent sales representative in Florida that does not exclusively represent Bourns. Bourns has no property or office in Florida and does not maintain any bank accounts in Florida. Bourns has one employee in Florida, a Field Applications Engineer, who works from his home in Tampa. In connection with his employment, Bourns maintains its registration as a foreign corporation with the State of Florida's Division of Corporations.

Gibbons also stated that the resistor used in Saft's batteries is a standard part that was not manufactured for any customer's specifications. Bourns sold the resistors at issue to Arrow Asia Pac, Ltd., an authorized dealer of Bourns' products in Hong Kong. Bourns sells the same resistors to other customers and distributors. Jabil bought the resistors from Arrow Asia Pac, Ltd. Bourns does not know the terms of their transaction. Bourns knew that Jabil was manufacturing busbar cards and/or power boards for batteries designed by Saft Groupe, S.A., which it understood to be headquartered in Bordeaux, France, where it designed and selected electronic components for its industrial and telecom battery business. Bourns knew Saft had a separate space and defense operation in Maryland.

With its response to the motion to dismiss, Saft submitted declarations from both its General Counsel and Chief Financial Officer of Saft America, Inc.,

as well as from an investigator Saft hired to investigate Bourns' contacts with Florida. Exhibits accompany these declarations. <u>See</u> Doc. 60. They reveal that the Bourns employee in Florida is not just an engineer but also lists his title as "sales" on his Linkedin page, Bourns' corporate registration document lists its purpose as "solicitation of sales and customer support," Bourns has an active registration with the Florida Department of Revenue that permits it to collect and remit sales tax in Florida, Bourns' website says that its products are sold in Florida through "sales offices," Bourns' distributors are located in Florida, and the Bourns resistor that allegedly failed can be purchased from a distributor in Florida for delivery in Florida (the investigator did so).

Additionally, the declarations reveal that Bourns and Saft America, Inc.—Space and Defense Division, located in Cockeysville, Maryland (referred to in the Agreement as the Second Party), entered into a non-disclosure agreement for the purpose of discussing "the possible use of Bourns' electronic components in the Second Party's end products." Doc. 60-2, Ex. A. The agreement term was five years and it was to be construed in accordance with the laws of the State of Delaware. The parties signed an amendment in September 2014, which permitted an additional division of Saft to take part in the discussions. The division is identified as Saft America, Inc.-Lithium Ion Division. Although the location of that division is not identified anywhere on the document, the Vice President for Saft who signed it states the purpose of

the agreement was to extend the non-disclosure agreement to Saft's lithium-ion battery manufacturing at its Jacksonville, Florida facility.

Saft includes in its materials June 2015 email correspondence between a Saft buyer in Jacksonville and a distributor whose product lines include Bourns. The distributor has attached an email dated July 7, 2014 from Bourns to the distributor with the subject line: "This month's Quotes for Saft," which lists a number of products and numbers (presumably prices). The email from the distributor asks the Saft buyer if "these programs" were for Jacksonville, and the buyer responds "[n]one of this looks familiar." Doc. 60-4 at 34.

Following the failure of Saft's batteries, Bourns entered into a non-disclosure agreement in November 2017 with Saft Groupe, S.A. (plaintiff's parent company in France), for the purpose of discussing the performance of Bourns' components in Saft's batteries. The document lists Saft's address in France and says it is to be governed by the laws of France. See Doc. 60-1, Ex. A. In 2017, Saft America and Saft Groupe, S.A., in France received reports directly from Bourns regarding Bourns' analysis of the battery failure.

Saft also points to Jabil's answer to Saft's Amended Complaint where Jabil admits that it was directed by Saft to purchase the component parts from Bourns. Doc. 44 at ¶ 7.

## 2. Specific Jurisdiction

"Specific jurisdiction refers to 'jurisdiction over causes of action arising from or related to a defendant's actions within the forum.'" <u>PVC Windoors</u>, 598 F.3d at 808 (quotation and citation omitted). When analyzing specific jurisdiction, the Court bears in mind that "Florida's long-arm statute is to be strictly construed." <u>Sculptchair</u>, 94 F.3d at 627 (citation omitted).

Saft first alleges that specific jurisdiction over Bourns is proper under Florida Statute § 48.193(1)(a)(1) because Bourns operates, conducts, engages in, or carries on business in Florida. "A defendant 'carries on business' within the meaning of the statute where its collective activities show a general course of business activity for pecuniary benefit in Florida." <u>Allen Sys. Grp., Inc. v. Avon Prods., Inc.</u>, No. 2:16-cv-121-FtM-38MRM, 2016 WL 7374512, at *3 (M.D. Fla. 2016) (citation omitted). However, by the terms of the long-arm statute, the cause of action must arise from those acts. Fla. Stat. § 48.193(1)(a). The record evidence does not support that finding. While Bourns has some Florida business connections, none of them were utilized in this transaction. Moreover, Saft did not directly purchase anything from Bourns. Rather, Bourns sold standard subcomponents to Arrow Asia Pac in Hong Kong, from which Jabil purchased the Bourns subcomponents for use in the components it sold to Saft in Florida. The 2014 non-disclosure agreement between Bourns and Saft does not reference Florida and in fact references other divisions of Saft,

either in France or Maryland. Even if the non-disclosure agreement does include Florida (as Saft's CFO states) it is only an agreement entered into for the purpose of discussing "the possible use" of Bourns' electronic components in Saft's end products. Doc. 62-2 at 8. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479 (1985) (noting that a contract with an out-of-state corporation is insufficient to establish minimum contacts for purposes of due process because "a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction") (citation and quotation omitted). Saft submitted no evidence of any further agreements between the parties, any purchases of Bourns' products by Saft (or Jabil or anyone else) in Florida, or any other communication between Saft and Bourns until the 2017 failure.

Furthermore, the 2017 non-disclosure agreement and report, which might otherwise be possible evidence of "carrying on business" in Florida, both post-date the alleged product failure, which is the relevant event for evaluating whether Bourns' actions might fairly result in its being haled into court. See, e.g., Anaya v. Machines de Triage et Broyage, No. 18-cv-01731-DMR, 2019 WL 1083783, at * 5 (N.D. Cal. Mar. 7, 2019) (holding defendant's subsequent remedial conduct of traveling to California to assist in incident investigation and attempting to repair the allegedly defective machine following the incident

was irrelevant for purposes of examining contacts for specific jurisdiction) (citing <u>Steel v. United States</u>, 813 F.2d 1545, 1549 (9th Cir. 1987)).[10]

Considering the evidence collectively, Saft has not shown that the Court has personal jurisdiction over Bourns under Florida Statute § 48.193(1)(a)(1). <u>See</u> <u>Hinkle v. Cirrus Design Corp.</u>, 775 F. App'x 545, 549 (11th Cir. 2019) (affirming dismissal for lack of specific personal jurisdiction where plaintiff's cause of action did not arise out of defendant's numerous business activities in Florida; although defendant registered to do business in Florida, had registered agent and sales representative in Florida, listed Florida locations on its website for purchasers to receive training and maintenance, and its executives traveled to Florida for sales event, plaintiff did not purchase his aircraft from Florida sales representative, did not attend trade show where executives were present, and the aircraft was delivered to plaintiff in Minnesota; moreover, even if plaintiff bought the aircraft due to defendant's Florida activities, the causes of action were for negligence and breach of contract, which did not relate to defendant's Florida activities); <u>Prunty v. Arnold & Itkin LLP</u>, 753 F. App'x 731, 735 (11th Cir. 2018) (finding out-of-state lawyers did not conduct business in

---

[10] Saft suggested the relevance of the 2017 interactions is that it shows Bourns' desire to provide service to Saft, its Florida customer. By that analysis, Bourns could be haled into court anywhere that its product is alleged to have failed if Bourns provides follow-up customer service to help determine the cause of the failure. That cannot be. <u>See</u> <u>Anaya</u>, 2019 WL 1083783, at *5.

Florida for purposes of § 48.193(1)(a)(1) where they used the internet to contact clients and conduct business in Florida but were not licensed in Florida, did not have offices in Florida, did not travel to Florida for business, and did not actively seek out Florida clients); <u>Allen</u>, 2016 WL 7374512, at *3-4 (finding that Florida business license and hundreds of Florida sales representatives were not enough to show defendant was carrying on a business in Florida for purposes of the long-arm statute because the subject of the parties' suit was their software contract, which was not related to defendant's Florida business activities); <u>Island Sea-Faris, Ltd. v. Haughey</u>, 13 So. 3d 1076, 1078 (Fla. 3d DCA 2008) (holding there was no basis to exercise personal jurisdiction over excursion company under § 48.193(1)(a)(1) where cruise line sold excursion tickets over the phone and by internet in Florida but excursion company itself never did, and the evidence did not reveal that the excursion company exercised control over cruise line as its agent, or that there was any connection between excursion ticket sales and the alleged tort).

Saft further alleges the Court has jurisdiction under Florida Statute § 48.193(1)(a)(6)(b), because Bourns' products caused injury to persons or property within the state arising out of Bourns' acts or omissions. However, "[m]ere allegations of economic damage will not suffice"—"there must be allegations of personal-bodily-injury or property damage." <u>Identigene, Inc. v. Goff</u>, 774 So. 2d 48, 49 (Fla. 2d DCA 2000) (citing <u>Aetna Life & Cas. Co. v.</u>

Therm-O-Disc, Inc., 511 So. 2d 992, 994 (Fla. 1987)); Allen, 2016 WL 7374512, at *4 (citing Identigene, 774 So. 2d at 49). Yet, whether Saft has pled an injury to something other than the product itself (as necessary to show more than mere economic damage) presents the same question as the economic loss rule issue—is Saft's battery "other property"? For the reasons explained above, on this record, the Court cannot determine whether it is. But even assuming it is, Saft must further show a connection between its alleged injury and Bourns' Florida activities. See, e.g., Milligan v. State Farm Mut. Auto. Ins. Co., No. 6:16-cv-1889-Orl-28DCI, 2018 WL 3352933, at *5 (M.D. Fla. June 15, 2018) (finding plaintiff did not demonstrate any connection between his injury from allegedly unnecessary surgery and defendant's solicitations in Florida, as necessary under § 48.193(1)(6)(b)), Report and Recommendation adopted by 2018 WL 3348889 (M.D. Fla. July 9, 2018). For the same reasons discussed above as to § 48.193(1)(a)(1), the Court does not see that Saft has made this connection.

However, even if the Court determined that this subsection of the long-arm statute was satisfied, the Court would find that exercising specific jurisdiction offends due process. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." Walden v. Fiore, 571 U.S. 277, 283-84 (2014) (quotation and citation omitted). The "defendant's suit-related conduct must create a substantial connection with the

forum State," with the focus on the "contacts that the defendant [it]self creates with the forum State."  Id. at 284.  Those purposeful contacts must be "such that the defendant should reasonably anticipate being haled into court in the forum."  Louis Vuitton Malletier, S.A. v. Mosseri, 736 F. 3d 1339, 1357 (11th Cir. 2013); see also Bristol-Myers Squibb Co. v. Superior Court of Calif., 137 S. Ct. 1773, 1779-81 (2017) (explaining that due process requires that a state's exercise of specific jurisdiction be "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction") (quotation omitted); Waite v. All Acquisition Corp., 901 F.3d 1307, 1314 (11th Cir. 2018) (affirming dismissal for lack of personal jurisdiction, quoting standards enunciated in Bristol-Myers).

The evidence above, which fails to include any connection between Bourns' limited contacts with Florida and its sale of a standard product to a Hong Kong distributor which then sold the product to Jabil for use in a product for Saft is insufficient to provide notice to Bourns that it could be subject to suit in Florida arising out of this transaction.  See, e.g., Erwin v. Ford Motor Co., No. 8:16-cv-1322-T-24AEP, 2016 WL 7655398, at *7 (M.D. Fla. Aug. 31, 2016) (finding no specific jurisdiction because due process would be offended where the Ford Edge the decedent was driving in Florida was not shipped to or purchased in Florida, and the alleged defect which caused the death was

unrelated to Ford's "wide array" of contacts in Florida). The Court cannot exercise specific personal jurisdiction over Bourns.

### 3. General Jurisdiction

The reach of Florida's general jurisdiction statute, Florida Statute § 48.193(2), "extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." <u>Carmouche</u>, 789 F.3d at 1204 (quotation and citation omitted). Thus, the Court considers both prongs together. "A court may assert general jurisdiction over [out-of-state] corporations without offending due process when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." <u>Id.</u> (quoting <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 920 (2011)). "Only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." <u>Id.</u> (quoting <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 137 (2014)). Indeed, "only in 'exceptional' cases" will a corporation's contacts with a state other than that of its incorporation or principal place of business be substantial enough to warrant exercising general jurisdiction. <u>Id.</u> (quoting <u>Daimler</u>, 571 U.S. at 139 n.19). While Saft (half-heartedly) argues this case could be such an exception (based on Bourns' having one employee and a network of distributors here, and by having registered with the state for ten years and being licensed to collect and pay sales taxes), the Court disagrees. <u>See, e.g.</u>, <u>id.</u> (affirming dismissal for lack

of general personal jurisdiction where defendant's Florida bank account, two Florida addresses, purchase of Florida insurance, filing of financial statement with Florida Secretary of State, joining Florida non-profit trade group, and consenting to jurisdiction in the Southern District for lawsuits arising out contract with cruise line was not sufficiently substantial activity in Florida to create an exceptional case); Schulman, 624 F. App'x at 1004 (holding defendant's distribution arrangements with Florida-based distributors, its marketing of boats in Florida-based magazines, its representatives' presence at Florida boat shows, and its agreement with an out-of-state finance company which helped Florida buyers and dealers to purchase its vessels, were insufficient to create general jurisdiction). The Court cannot exercise general personal jurisdiction over Bourns.

Bourns' motion to dismiss (Doc. 57) is due to be granted for lack of personal jurisdiction. This dismissal will be without prejudice to suing Bourns in a forum which can exercise personal jurisdiction over it.

## III. Conclusion

Accordingly, it is hereby

**ORDERED:**

1. Defendant's Bourns, Inc.'s Motion to Dismiss (Doc. 57) is **GRANTED**. Bourns, Inc. is dismissed without prejudice for lack of personal jurisdiction.

2.    Jabil Circuit (Guangzhou), Ltd.'s Motion to Dismiss (Doc. 91) is **DENIED**.  Jabil's Answer (Doc. 44) will remain as is and the pleadings are considered closed.

3.    Saft and Jabil shall file an amended case management report no later than **October 10, 2019**.

**DONE AND ORDERED** in Jacksonville, Florida this 23rd day of September, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

s.
Copies:
Counsel of record